IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| DOMINIC FAIELLA,<br><br>    Plaintiff,<br><br>  v.<br><br>SUNBELT RENTALS, INC.,<br><br>    Defendant.<br>------------------------------<br>SUNBELT RENTALS, INC.,<br><br>    Defendant/Third-Party<br>      Plaintiff,<br><br>  v.<br><br>LIVE NATION WORLDWIDE, INC.,<br>Individually and d/b/a LIVE<br>NATION BB&T PAVILION,<br><br>    Third-Party Defendant. | Civil No. 18-11383 (RMB/AMD)<br><br><br><br><br><br><br><br><br>**MEMORANDUM OPINION AND ORDER** |

**APPEARANCES:**

Anthony J. Leonard, Esq.
Leonard, Sciolla, Hutchison,
 Leonard & Tinari, LLP
713 East Main Street, Suite 1A
Moorestown, NJ 08057
 *Counsel for Dominic Faiella*

Thomas J. Wagner, Esq.
Amy Lynn Wynkoop, Esq.
Law Offices of Thomas J. Wagner, LLC
8 Penn Center, 6th Floor
1628 John F. Kennedy Blvd.
Philadelphia, PA 19109
 *Counsel for Sunbelt Rentals, Inc.*

Drew J. Parker, Esq.
Deborah Halpern, Esq.
Parker Young & Antinoff, LLC
2 Eves Drive, Suite 200
Marlton, NJ 08053
 *Counsel for Live Nation Worldwide, Inc.,
   Individually and d/b/a Live Nation BB&T Pavilion*

**DONIO, MAGISTRATE JUDGE:**

This matter comes before the Court by way of Plaintiff's motion for leave to file an amended complaint to add Third-Party Defendant Live Nation Worldwide, Inc. (hereinafter, "Live Nation") as a direct defendant in this litigation, to assert an intentional tort claim against Live Nation, and to amend the claims against Defendant Sunbelt Rentals, Inc. (hereinafter, "Sunbelt") to assert an implied warranty count. (*See* Pl.'s Mot. [D.I. 83], p. 5, June 7, 2019; Proposed Am. Compl. [D.I. 83], p. 14.) Defendant Sunbelt consents to the proposed amendments. (Pl.'s Mot. [D.I. 83], p. 5.) Live Nation opposes the motion as untimely, prejudicial, and futile. (Live Nation's Opp'n [D.I. 85], June 11, 2019.) For the reasons set forth below, the Court grants Plaintiff's motion to amend.

This matter arises out of alleged injuries to Plaintiff that occurred when an off-road utility vehicle (hereinafter, "Ranger Polaris," "Ranger," or "Polaris"), owned by Defendant Sunbelt and leased to Live Nation, purportedly rolled over while

2

Plaintiff was operating the vehicle. Plaintiff asserts severe and permanent injuries and sets forth a number of state law claims against Defendant Sunbelt. (Pl.'s Mot. [D.I. 83]; Proposed Am. Compl. [D.I. 83].) By way of Order dated October 23, 2018, the Court granted Defendant Sunbelt leave to file a third-party complaint against Live Nation. (Order [D.I. 31], Oct. 23, 2018.) On November 2, 2018, Defendant Sunbelt filed its Third-Party Complaint against Live Nation. (Third-Party Complaint [D.I. 33], Nov. 2, 2018.) On December 2, 2018, Live Nation filed its Answer to the Third-Party Complaint. (Answer [D.I. 36], Dec. 2, 2018.) On March 21, 2019, the Court granted Plaintiff's motion to amend to dismiss Defendant Polaris Industries, Inc. from the case, [D.I. 43], and dismissed as moot Defendant Sunbelt's motion to amend, [D.I. 44]. (*See* Order [D.I. 57], Mar. 21, 2019.) On June 7, 2019, Plaintiff filed the present motion seeking to add Live Nation as a direct defendant and to assert an intentional tort claim. (Pl.'s Mot. [D.I. 83].) On June 26, 2019, the Court conducted oral argument on the present motion. (Minute Entry [D.I. 94], June 27, 2019.)

"Under Federal Rule of Civil Procedure 15(a), leave to amend pleadings shall be 'freely give[n]' when 'justice so requires.'" *Custom Pak Brokerage, LLC v. Dandrea Produce, Inc.*, No. 13-5592, 2014 WL 988829, *1 (D.N.J. Feb. 27, 2014). A court may, however, deny a motion to amend "where it is apparent from

3

the record that '(1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party.'" *U.S. ex rel. Schumann v. Astrazeneca Pharm. L.P.*, 769 F.3d 837, 849 (3d Cir. 2014) (citing *Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000)).[1]

The present motion also implicates Federal Rule of Civil Procedure 16. "Where deadlines for amending pleadings are the subject of a scheduling order and the deadlines have passed, the moving party must meet Rule 16's good cause standard in order to amend." *Stolinski v. Pennypacker*, No. 07-3174, 2011 WL 13238545, at *7 (D.N.J. June 23, 2011) (citing *Stallings ex. rel. Estate of Stallings v. IBM Corp.*, No. 08-3121, 2009 WL 2905471, at *16 (D.N.J. Sept. 8, 2009)). *See also* Fed. R. Civ. P. 16(b)(4) (providing that a scheduling order "may be modified only for good cause and with the judge's consent.") "[W]here a party seeks to

---

[1] The Court notes that Federal Rule of Civil Procedure 21 governs an application seeking to add a party as an additional defendant. *Custom Pak Brokerage, LLC*, 2014 WL 988829, *1 (citing cases that note attempts to add new parties by way of motions to amend invoke Rule 21). "In evaluating the propriety of an amended pleading pursuant to Federal Rule of Civil Procedure 21, the Court applies the same 'liberal[]' standard applicable to motions arising under Federal Rule of Civil Procedure 15(a)." *Id.* (citing *Sly Magazine, LLC v. Weider Publ'ns L.L.C.*, 241 F.R.D. 527, 532 (S.D.N.Y. 2007)); *see also Sutton v. New Century Financial Servs.*, No. 05-3125, 2006 WL 3676306, at *1 (D.N.J. Dec. 11, 2006) ("Although [p]laintiff seeks to drop one party and add another pursuant to Rule 21, the same standards apply under Rules 15(a) and 21.") (citing *Wolfson v. Lewis*, 168 F.R.D. 530, 533 (E.D. Pa. 1996)). Consequently, the Court addresses Live Nations's argument under the standard set forth in Rule 15.

4

amend the pleadings after the expiration of the Rule 16 deadline, a party must first demonstrate good cause," and only after the party has demonstrated good cause will a court "evaluate the proposed amendment under Rule 15(a)." *Stolinski*, 2011 WL 13238545, at *7 (citation omitted) (noting that "establishing good cause to extend the deadline for amendment under Rule 16 merely removes a procedural bar for [a party] which then permits the [c]ourt to consider the motion to amend under Rule 15."). *See also Ewing v. Cumberland Cnty.*, No. 09-5432, 2014 WL 3974159, at *4 (D.N.J. July 16, 2014) ("[P]rior to evaluating a proposed amendment under Federal Rule of Civil Procedure 15(a), the court must evaluate whether the party seeking leave has affirmatively demonstrated 'good cause' to modify the scheduling order."). Further, good cause "'hinges on [the] diligence of the movant[.]'" *Id.* (citations omitted). However, "'knowledge of the potential claim' prior to the expiration of the deadline to amend constitutes the 'most common basis' for finding the absence of good cause." *Id.* at *4.

The motion to amend was filed on June 7, 2019 after the February 28, 2019 deadline set forth by the Court's Scheduling Order of January 28, 2019. (*See* Scheduling Order [D.I. 42], p. 2.) Accordingly, the Court first addresses whether Plaintiff has demonstrated good cause under Rule 16.

Live Nation asserts that Plaintiff's motion should be denied on timeliness grounds since on the date of Plaintiff's

5

accident, "he was fully aware of the identify of his employer and whether there was any potential claim beyond worker's compensation[.]" (Live Nation's Opp'n [D.I. 85], p. 1.) Live Nation further contends that while Plaintiff was aware of any claim against Live Nation at the time of his injury, Plaintiff seeks to assert a claim near the end of fact discovery. (*Id.*, p. 2.) Consequently, Live Nation argues, since "Plaintiff has not diligently prosecuted this matter[,]" the Court should deny Plaintiff's motion.[2] (*Id.*)

In response, Plaintiff asserts that "[i]n the interest of judicial economy, and to avoid a fishing expedition from the outset, Plaintiff waited to file for leave to amend his complaint until after he had a sufficient foundation for his claims." (Pl.'s Reply [D.I. 87], June 21, 2019, p. 2.) Plaintiff further argues that "[i]t is not Plaintiff's fault that this evidence was not produced until the eleventh hour." (*Id.*) Plaintiff asserts that Defendant Sunbelt, in its discovery responses, contends that the safety netting was present on the vehicle when delivered to Live Nation. (Pl.'s Mot. [D.I. 83], p. 3 (citing Defendant Sunbelt's Answers and Objections to Plaintiff's Interrogatories, Ex. B, dated May 6, 2019).) Plaintiff further argues that Live Nation has

---

[2] In its briefing, Live Nation does not specifically address Rule 16 or the good cause standard. However, at oral argument, Live Nation clarified it opposes Plaintiff's motion to amend pursuant to Rule 16 as well as Rule 15. Consequently, the Court examines Live Nation's diligence and untimeliness arguments under Rule 16.

6

averred in its discovery responses that "the Ranger at issue was provided by Sunbelt Rentals without the mandatory cab nets." (*Id.* (citing Live Nation's Responses to Sunbelt Rentals, Inc.'s Request for Admissions, Ex. A).) Further, Plaintiff asserts that Live Nation's corporate representative, Curtis Voss, was deposed on June 5, 2019, and at his deposition, Mr. Voss testified that Live Nation does not allow its employees to remove safety netting, and further, that "he does not know whether the Ranger at issue came with safety cab nets when it was leased from Defendant Sunbelt[, but] that Live Nation relies on Sunbelt to provide appropriate equipment with all safety features." (*Id.*, p. 4.) Accordingly, Plaintiff argues that "[t]he positions of Live Nation and Sunbelt Rentals regarding the cab nets are irreconcilable[,]" and "Plaintiff is forced to request leave to file a Fourth Amended Complaint to preserve all claims in this matter[,]" including an intentional tort claim against Live Nation.[3] (*Id.*, pp. 4-5.)

The Court finds that Plaintiff has demonstrated good cause under Rule 16 sufficient to permit the filing of the motion

---

[3] Plaintiff further asserts that the dilatory production of documents and deposition of Live Nation's corporate representative "ha[ve] necessitated this amendment." (Pl.'s Reply [D.I. 87], p. 1.) Plaintiff asserts, for example, that on May 16, 2019, Defendant Sunbelt produced certain emails between Defendant Sunbelt and Live Nation relevant to the matter. (*Id.*, p. 2.) Plaintiff further asserts that despite Plaintiff serving a subpoena for documents on Live Nation, Live Nation did not produce the emails. (*Id.*) Plaintiff also contends that Live Nation's corporate representative, Mr. Voss, was deposed on June 5, 2019 "despite being noticed numerous times over the last six months." (*Id.*)

7

to amend beyond the February 28, 2019 deadline set forth in the Scheduling Order of January 28, 2019. Specifically, the Court accepts Plaintiff's argument that the recent production of written discovery responses and deposition of Mr. Voss presented additional information upon which Plaintiff could rely to support the proposed new claim against Live Nation. Further, the Court does not find that Plaintiff failed to act diligently to explore these issues related to the safety netting and the alleged removal of the netting. Given the recent production and deposition, the Court finds that Plaintiff acted diligently in seeking to amend the complaint after the applicable deadline and that Plaintiff has demonstrated good cause under Federal Rule of Civil Procedure 16.

The Court next addresses Live Nation's arguments under Rule 15 that the motion should be denied on prejudice and futility grounds. "[S]ubstantial or undue prejudice to the non-moving party is a sufficient ground for denial of leave to amend." *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001) (citing *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993). "In determining whether amendment of a complaint will cause undue prejudice, the Court must 'focus on the hardship to the defendants if the amendment were permitted.'" *Stolinski*, 2011 WL 13238545, at *6 (citing *Cureton*, 252 F.3d at 273 (citing *Adams v. Gould, Inc.*, 739 F.2d 858, 868 (3d Cir. 1984))). Consequently, undue prejudice suffices to deny leave to amend, where "if

8

amendment were permitted, the [defendant] would be prejudiced by having to engage in burdensome new discovery and significant trial preparation." *Cureton*, 252 F.3d at 274 (finding that district court did not abuse its discretion in denying motion to amend where the district court determined that the "'proposed amendment would essentially force the [defendant] to begin litigating this case again.'") However, "incidental prejudice to the opponent is not a sufficient basis for denial of an amendment; such prejudice becomes 'undue' when the opponent shows it would be 'unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered[.]'" *Harrison Beverage Co. v. Dribeck Importers, Inc.*, 133 F.R.D. 463, 468 (D.N.J. 1990) (citing *Heyl & Patterson Int'l, Inc. v. F.D. Rich Housing of the Virgin Islands, Inc.*, 663 F.2d 419, 425 (3d Cir. 1981), *cert. denied sub nom. F.D. Rich Housing of the Virgin Islands, Inc. v. Gov't of the Virgin Islands*, 455 U.S. 1018 (1982) (denying in part motion to amend to add affirmative defenses where discovery was complete and amendment to add the defenses would cause discovery to be reopened and a postponement of trial).

Live Nation asserts that the fact discovery deadline is approaching, and Live Nation will be "severely and irreparably prejudiced if it [has] to conduct discovery, including re-deposing Plaintiff and obtaining an IME in the next [twenty] days." (Live Nation's Opp'n [D.I. 85], p. 2.) Live Nation also asserts that it

did not conduct discovery as to damages and/or liability on the intentional tort claim. (*Id.*) The Court rejects Live Nation's arguments. The Court recently extended discovery deadlines. (*See* Scheduling Order [D.I. 91], June 25, 2019.) Further, Live Nation, as the third-party defendant, has participated in this litigation and discovery to date. Moreover, there has been no showing that Live Nation has been deprived of the ability to offer facts or evidence it would have offered, and Live Nation has not sufficiently articulated prejudice that would warrant denial of a motion to amend under Rule 15.

As to futility, the Court notes that "[a]n amendment would be futile if the complaint, as amended, advances a claim or defense that 'would fail to state a claim upon which relief could be granted.'" *Gutwirth v. Woodland Cedar Run Wildlife Refuge*, 38 F. Supp. 3d 485, 488 (D.N.J. 2014) (citing *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000)). "In evaluating futility, courts employ the 'same standard of legal sufficiency as applies under [Federal] Rule [of Civil Procedure] 12(b)(6).'" *Id.* (citing *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 175 (3d Cir. 2010)). "For a complaint to survive dismissal pursuant to this standard, it 'must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Custom Pak*, 2014 WL 988829, at *1 (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

Live Nation's futility argument is based upon New Jersey's workers' compensation bar of certain tort claims against an employer brought by an employee injured in the course of her employment. Specifically, New Jersey's Workers' Compensation Act, N.J.S.A. 34:1 *et seq.* provides the exclusive remedy for an employee's claim against an employer for a workplace injury, except for "injuries that result from an employer's 'intentional wrong[.]'" *Van Dunk v. Reckson Assocs. Realty Corp.*, 210 N.J. 449, 451 (2012). To establish an intentional tort claim, a plaintiff must establish that (1) the "employer [] knowingly expose[d] [an] employee to a substantial certainty of injury," and (2) "the resulting injury [was] not [] 'a fact of life of industrial employment' and [was] plainly beyond anything the Legislature intended the Act to immunize." *Allen v. MB Mutual Holding Co.*, No. A-0242-18T2, 2019 WL 2395913, *4 (N.J. Super. Ct. App. Div. June 6, 2019).

Live Nation argues that Plaintiff has not sufficiently pled an essential element of the intentional tort claim: deliberate intent to injure. (Live Nation's Opp'n [D.I. 85], pp. 2-3.) Live Nation asserts that "Plaintiff has failed to produce a single fact to support a claim of a deliberate intent to injure." (*Id.*, p. 5.) Live Nation further asserts that "[t]he record is devoid of any facts . . . [as t]here were no prior incidents, no production quotas or anything to support a claim of deliberate indifference

11

to Plaintiff's safety."[4] (*Id.*, p. 3.) Live Nation also argues "[t]hat [since] Live Nation does not know if the vehicle came with the netting, without more, [that fact is] not sufficient to support a claim of a deliberate intent to injure or certain knowledge that Plaintiff would be injured." (*Id.*, p. 5.) Further, Live Nation contends that even if it removed the safety netting, "that fact alone would not be sufficient to remove the matter from the worker's compensation bar [since] Plaintiff must establish that Live Nation acted with certain knowledge that Plaintiff would be injured and that he is clearly unable to do." (*Id.*)

Plaintiff contends that he has sufficiently met the pleading standard for the intentional tort claim based upon the allegation that Live Nation "intentionally remov[ed] the safety cab net from the Ranger prior to its use by Plaintiff and other Live Nation employees[.]" (Pl.'s Mot. [D.I. 83], p. 5.) Plaintiff further asserts that the correct standard under an intentional tort claim is not intent to injure but rather, "a substantial certainty that injury . . . will result." (Pl.'s Reply [D.I. 87], p. 2.) Plaintiff further asserts that he has pled a factual basis

---

[4] Live Nation also argues that "[i]n fact, the specific type of vehicle (Polaris) was not requested by Live Nation and the vehicle in question may not even have been operational when delivered. The record reflects that there was very little use of the vehicle prior to the incident and the so called cab netting may not have been included with the original delivery of the vehicle." (*Id., p.3.)* However, these arguments are based on factual assertions that are not to be considered under the Rule 12(b)(6) standard governing futility.

12

for the intentional tort claim under the correct standard. (Pl.'s Memorandum of Law in Support [D.I. 83], p. 5.)

To prove the first prong of an intentional tort claim,[5] a plaintiff must establish "a virtual certainty that [] injury . . . will result." *Van Dunk*, 210 N.J. at 470-71. "A probability, or knowledge that such injury or death 'could' result, is insufficient." (*Id.*) In determining whether a virtual certainty of injury exists, "[a]n intentional wrong requires more than a violation of safety regulations or failure to follow good safety practices." *Spatola v. Seabrook Brothers & Sons, Inc.*, No. A-2761-17T3, 2019 WL 2004311, *3 (N.J. Super. App. Div. May 7, 2019). Rather, courts have looked to whether "[t]he alleged wrongful act [was] accompanied by something more, typically deception, affirmative acts that defeat safety devices, or a willful failure to remedy past violations." *Id.* Consequently, at the pleadings stage, a plaintiff must make factual allegations that his employer engaged in conduct with knowledge of a virtual certainty that injury would occur.

In support of its position, Live Nation cites to *Allen v. MB Mutual Holding Co.* in which the New Jersey appellate court

---

[5] Live Nation does not make any arguments as to the sufficiency of the pleadings on the second prong. As to the second prong, the Court notes that Plaintiff has pled "Live Nation's conduct and the conditions it created are outside the purview of the conditions the Legislature intended to immunize under the Workmen's Compensation bar." (Proposed Am. Compl. [D.I. 83] at ¶ 92.)

13

affirmed a trial court's dismissal of plaintiff's intentional wrong claim. 2019 WL 2395913, at *3-5. In *Allen*, Plaintiff had alleged an intentional tort on the basis that defendants required her to continue working at her place of work, a bank branch, despite an existing mold problem. *Id.* at *2-3. Plaintiff also alleged that her employer had directed plaintiff to enter the workplace without safety equipment. *Id.* The trial court held that in her pleadings, plaintiff failed to allege sufficient facts that defendants had acted with a substantial certainty of injury to plaintiff given that plaintiff had pled that defendant took action within a month of learning of the seriousness of the mold problem, including by holding a meeting, scheduling and completing an inspection, moving employees away from the hazardous area, and ultimately closing the bank branch. *Id.* at *3. The trial court further determined that this conduct "d[id] not appear to [constitute] actions of an employer acting with substantial certainty that their employees w[ould] be injured[.]" *Id.* Moreover, the trial court held that "'it is not enough that [d]efendants understood there was a probability that [p]laintiff would be injured by the mold[.]" *Id.* The New Jersey appellate court affirmed the trial court in all respects, finding that plaintiff's complaint failed to assert that "defendants deliberately deceived others regarding the condition of the workplace or employee illness, removed safety devices which facilitated mold growth, or

14

ignored prior injuries, accidents, or employee complaints regarding a dangerous condition[.]" *Id.* at *5.

Here, Plaintiff pleads in the proposed amended complaint that "Live Nation intentionally removed the safety cab net from the Ranger prior to its use by Plaintiff and other Live Nation employees[;]" that "Live Nation knew that without the proper safety devices (*e.g.*, the safety cab net) the Ranger was a dangerous vehicle[;]" and that "Live Nation knowingly caused Plaintiff harm through its conduct . . . [and] it acted with knowledge, and was substantially certain, that its conduct would lead to a worker/operator/passenger of the Ranger, such as Plaintiff, suffering harm." (Proposed Am. Compl. [D.I. 83] at ¶¶ 89-91). The Court finds that Plaintiff has sufficiently pled the first prong of an intentional tort claim. Unlike in *Allen*, Plaintiff has pled with sufficient factual support an affirmative act on the part of Live Nation and that Live Nation acted with knowledge of the substantial certainty that its conduct would cause harm to Plaintiff.

Moreover, as noted *supra*, Live Nation's arguments are more appropriately addressed by way of a summary judgment motion. For example, Live Nation asserts that Plaintiff has failed "to produce" any facts to support a showing that Live Nation acted with deliberate intent to injure and that "[t]he record is devoid of any facts to support [the] claim that Live Nation deliberately

15

removed the netting with certain knowledge that Plaintiff would be injured." (Live Nation's Opp'n [D.I. 85], pp. 3, 5.) At oral argument, counsel for Live Nation conceded that all but one of the cases cited by Live Nation analyze whether the factual record supports an intentional tort claim at the summary judgment stage. *See, e.g.*, *Van Dunk*, 210 N.J. at 452 (assessing appellate court's ruling at summary judgment as to whether plaintiff could sustain a claim for an intentional tort); *Kaczorowska v. Nat'l Envelope Corp.*, 342 N.J. Super. 580, 590 (App. Div. 2001) (assessing viability of plaintiff's claims under the summary judgment standard). Moreover, in addressing an intentional tort claim, the New Jersey Supreme Court found in *Crippen* that the trial court erred when it granted summary judgment prior to the completion of discovery. *Crippen v. Central Jersey Concrete Pipe Co.*, 176 N.J. 397, 409 (2003).[6] Here, discovery is not complete. For all of these reasons, the Court rejects Live Nation's position that Plaintiff's allegations are insufficient to assert the first prong of an intentional tort claim.

Consequently, the Court finds that Plaintiff has met the good cause standard for filing the motion to amend past the Court's January 28, 2019 Scheduling Order deadline of February 28, 2019, that Live Nation has not demonstrated undue prejudice to warrant

---

[6] The *Crippen* court also noted that the first prong of an intentional tort claim is "ordinarily . . . determined by the jury[.]" *Id*. at 408.

16

denial of the motion, and that Plaintiff has sufficiently pled the intentional tort claim.

For the reasons set forth herein, and for good cause shown:

IT IS on this **5th** day of **August 2019**,

**ORDERED** that Plaintiff's motion to amend [D.I. 83] shall be, and is hereby, **GRANTED**; and it is further

**ORDERED** that Plaintiff shall file the amended complaint in the form attached to the motion within ten (10) days of entry of this Order and shall serve the amended complaint in accordance with the Federal Rules of Civil Procedure.

s/ Ann Marie Donio<br>
ANN MARIE DONIO<br>
UNITED STATES MAGISTRATE JUDGE

cc: Hon. Renée Marie Bumb