[D.I. 305]
[D.I. 307]
[D.I. 308]
[D.I. 309]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |
|---|---|
| DOMINIC FAIELLA, | Civil No. 18-11383 (RMB/AMD) |
| Plaintiff, | |
| v. | |
| SUNBELT RENTALS, INC., et al., | **MEMORANDUM OPINION** |
| Defendants. | **AND ORDER** |

**APPEARANCES**:

Anthony J. Leonard, Esq.
Benjamin E. Smith, Esq.
Law Offices of Anthony J. Leonard, LLC
1820 Chapel Avenue West
Suite 195
Cherry Hill, NJ 08002

   *Counsel for Plaintiff Dominic Faiella*

Thomas J. Wagner, Esq.
Amy Lynn Wynkoop, Esq.
Law Offices of Thomas J. Wagner, LLC
8 Penn Center, 6th Floor
1628 John F. Kennedy Blvd.
Philadelphia, PA 19103

   *Counsel for Defendant Sunbelt Rentals, Inc.*

Derrick G. Timms, Esq.
Drew J. Parker, Esq.
Parker Young & Antinoff, LLC
2 Eves Drive, Suite 200
Marlton, NJ 08053

   *Counsel for Defendant Live Nation Worldwide, Inc.*

**DONIO**, Magistrate Judge:

This matter comes before the Court by way of four motions filed by Plaintiff, Dominic Faiella, seeking to strike various discovery amendments of Defendant Sunbelt Rentals, Inc. (hereinafter, "Sunbelt"). Two of the motions seek to strike discovery amendments by which Sunbelt provided surveillance evidence after the close of discovery – a motion [D.I. 305] to strike a May 12, 2021 discovery amendment by which Sunbelt provided to Plaintiff surveillance obtained in March 2021, and a motion [D.I. 309] to strike a March 30, 2020 discovery amendment by which Sunbelt provided surveillance information obtained in September 2019. In addition, Plaintiff filed a motion [D.I. 307] to strike Sunbelt's December 18, 2020 and April 8, 2021 discovery amendments by which Sunbelt provided information in connection with the report of its expert, Paul Guthorn, MSME, P.E. Finally, Plaintiff filed a motion [D.I. 308] to strike a June 10, 2020 discovery amendment by which Sunbelt amended its interrogatory responses to identify two new fact witnesses. The Court held oral argument on the record on these motions on January 19, 2022 and reserved decision at that time. The Court has considered the submissions of the parties and the arguments of counsel. For the reasons that follow, Plaintiff's motions to strike the March 30, 2020, June 10, 2020, and May 12, 2021 discovery amendments by which Sunbelt provided surveillance

evidence and the names of two new fact witnesses are granted, and Plaintiff's motion to strike the December 18, 2020 and April 8, 2021 discovery amendments by which Sunbelt provided supplemental information in connection with the report of Paul Guthorn is denied.

This case arises out of injuries allegedly sustained by Plaintiff when a Polaris Ranger off-road utility vehicle he was operating overturned, purportedly causing "severe and permanent injuries[.]" (Fourth Am. Compl. [D.I. 97], p. 3, ¶ 10.) The Ranger was allegedly owned by Sunbelt and leased to Live Nation Worldwide, Inc. (hereinafter, "Live Nation"), another defendant in this matter. (*Id.* at p. 3, ¶ 14.) Plaintiff avers that the "safety cab net on the driver's side of the Ranger was intentionally removed" either by Sunbelt or by Live Nation at some point prior to the date the Ranger overturned. (*Id.* at p. 3, ¶¶ 11-12.)

Pursuant to this Court's September 6, 2019 Scheduling Order, discovery in this case closed on October 30, 2019. (Am. Scheduling Order [D.I. 106], Sept. 6, 2019, p. 2, ¶ 2.) All of the motions presently before the Court relate to discovery that Sunbelt produced after the close of discovery. With respect to the three motions regarding Sunbelt's fact discovery amendments, Plaintiff generally argues that Sunbelt was required under Federal Rule of Civil Procedure 16 to seek leave of court and demonstrate good cause before providing discovery beyond the fact discovery

deadline. Plaintiff further argues that Sunbelt's failure to demonstrate good cause under Rule 16 warrants striking these late discovery amendments. With respect to Plaintiff's motion to strike the discovery amendments by which Sunbelt provided data in connection with its expert report, Plaintiff argues that Sunbelt violated Federal Rule of Civil Procedure 26(a) and is subject to sanctions pursuant to Federal Rule of Civil Procedure 37(c). Sunbelt asserts that all four motions should be evaluated pursuant to the factors set forth in *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904 (3d Cir. 1997), *overruled on other grounds by Goodman v. Lukens Steel Co.*, 777 F.2d 113 (3d Cir. 1985), which a court considers when deciding whether to exclude evidence as a discovery sanction. Sunbelt argues that because any prejudice to Plaintiff arising from the belated discovery amendments can be cured by allowing additional discovery, the *Pennypack* factors weigh against striking the discovery amendments.

In considering the motions to strike Sunbelt's belated production of fact discovery, the starting point of the Court's analysis is Federal Rule of Civil Procedure 16, which provides courts with the "'discretion to manage the schedule of litigation[.]'" *Carroll v. Delaware River Port Auth.,* No. 13-2833, 2015 WL 12819181, at *3 (D.N.J. Mar. 31, 2015) (quoting *Williams v. Sullivan*, No. 08-1210, 2011 WL 2119095, at *4 (D.N.J. May 20,

4

2011)). Rule 16(b)(4) states that "[a] schedule may be modified
only for good cause and with the judge's consent." FED. R. CIV. P.
16(b)(4). Good cause in this context is established when "the party
seeking the extension" can "show that the deadlines set forth in
the scheduling order 'cannot reasonably be met despite the
diligence of the party seeking the extension.'" *Williams*, 2011 WL
2119095, at *4 (quoting FED. R. CIV. P. 16(b) advisory committee
note to 1983 Amendment). "Good cause may also be satisfied if the
movant shows that the inability to comply with a scheduling order
is 'due to any mistake, excusable neglect or any other factor which
might understandably account for failure of counsel to undertake
to comply with the Scheduling Order.'" *Id.* (quoting *Newton v. Dana
Corp., Parish Div.*, No. 94-4958, 1995 WL 368172, at *1 (E.D. Pa.
June 21, 1995)). If the movant cannot demonstrate good cause, "the
scheduling order shall control." *Id.* (citations omitted). "As the
Third Circuit has stated, 'scheduling orders are at the heart of
case management. If they can be disregarded without a specific
showing of good cause, their utility will be severely impaired.'"
*Lasermaster Int'l Inc. v. Netherlands Ins. Co.*, No. 15-7614, 2021
WL 3616197, at *2 (D.N.J. Aug. 13, 2021)(quoting *Koplove v. Ford
Motor Co.*, 795 F.2d 15, 18 (3d Cir. 1986)). Courts in this District
have noted that the focus of a Rule 16 analysis is the moving
party's diligence and not prejudice to the non-moving party. *See,
e.g., Lasermaster Int'l*, 2021 WL 3616197, at *2 ("'Rule 16(b)(4)

focuses on the moving party's burden to show due diligence.'")(quoting *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 84 (3d Cir. 2010)); *GlobespanVirata, Inc. v. Texas Instruments, Inc.*, No. 03-2854, 2005 WL 1638136, at *3-4 (D.N.J. July 12, 2005)(same).

As noted above, Sunbelt argues that the instant motions to strike should be decided by examination of the factors set forth in *Meyers v. Pennypack Woods*. The Third Circuit in *Pennypack* identified numerous factors that a court should consider when deciding whether to exclude evidence as a sanction, including (1) the prejudice or surprise to a party against whom evidence is offered; (2) the ability to cure that prejudice; (3) the likelihood of disruption to trial; (4) the bad faith or willfulness of the party who did not comply with the disclosure rules; and (5) the importance of the evidence to the proffering party's case. *See Pennypack*, 559 F.2d at 904-05; *In re Mercedes-Benz Anti-Trust Litig.*, 225 F.R.D. 498, 506 (D.N.J. 2005). Unlike the Rule 16(b)(4) good cause analysis, a *Pennypack* analysis requires consideration of prejudice to the non-moving party and the ability to cure such prejudice.

In *Lee v. Kmart Corp.*, No. 14-79, 2016 WL 4373694, at *1 (D.V.I. Aug. 15, 2016), another court addressed the intersection of Rule 16 and the *Pennypack* factors. In *Lee,* the court denied the plaintiff's motion for an extension of time to file expert reports,

yet the plaintiff disregarded this ruling and nonetheless produced expert reports after the expert discovery deadline. *Lee*, 2016 WL 4373694, at *2-3. The defendant in *Lee* moved to exclude the expert witnesses as untimely. *Id.* at *3. In opposition to the motion, the *Lee* plaintiff argued that "a motion for an extension of the scheduling order and a motion to exclude witnesses require different legal analyses[.]" *Id.* at *9. The *Lee* plaintiff further argued that because the court did not engage in a *Pennypack* analysis when deciding whether to extend the scheduling order deadlines, the court's denial of the request for an extension of time under Rule 16(b)(4) did not preclude the plaintiff from filing expert disclosures after the court-ordered deadline. *Id.* In rejecting this argument, the *Lee* court noted that the plaintiff's "peculiar explanation suggests that a party can violate the deadlines in a court's scheduling order with impunity, and ignore a court order denying an extension of the deadlines because, in the final analysis, a party's untimely disclosed witnesses must be accepted unless an analysis under the *Pennypack* factors dictates otherwise." *Id.* The *Lee* court further noted that taking the plaintiff's argument "to its logical conclusion, a party need not even file a motion to extend the deadlines since an adverse ruling by the court can simply be ignored in anticipation of a second bite at the apple with a *Pennypack* analysis." *Id.* The *Lee* court further found that adopting the plaintiff's argument "would

7

vitiate the showing of 'good cause' required to modify scheduling orders under Rule 16(b)(4); allow a party to ignore a court order denying an extension of a discovery deadline; . . . and allow parties to stand well-established rules and laws for litigation and the Court's authority to manage its docket on their head." *Id.*

The analysis in *Lee* is instructive in determining whether the instant motions should be decided pursuant to the good cause standard of Rule 16 or analysis of the *Pennypack* factors. A party requesting an extension of time to obtain discovery must show good cause for the extension under Rule 16, and many courts have denied such requests upon a finding of lack of diligence, without then considering the *Pennypack* factors. *See, e.g., Turner v. Schering-Plough Corp.,* 901 F.2d 335, 341 n.4 (3d Cir. 1990) (where district court refused to reopen discovery period to allow plaintiff to obtain evidence needed to oppose summary judgment, Third Circuit found no abuse of discretion, noting that documents could have been discovered during discovery period and that "Rule 16 'scheduling orders are at the heart of case management,' and if they can be flouted every time counsel determines she made a tactical error in limiting discovery 'their utility will be severely impaired'")(quoting *Koplove*, 795 F.2d at 18); *Baker v. U.S. Marshal Serv.*, No. 12-494, 2014 WL 2534927, at *2 (D.N.J. June 5, 2014)(denying parties' requests for extension of time to complete discovery because parties did not act diligently to

8

complete discovery and failed to demonstrate good cause under Rule 16); *Mathieux v. Bally's Atlantic City*, No. 05-3551, 2006 WL 3733291, at *1 (D.N.J. Dec. 15, 2006)(court denied request for liability discovery because plaintiff failed to demonstrate good cause to extend deadline), *reconsideration denied by* 2006 WL 3833590, at *1 (D.N.J. Dec. 29, 2006); *Newton*, 1995 WL 368172, at *1 (denying motion to extend time to complete discovery for lack of good cause where "nothing prevented plaintiff from complying with the discovery schedule").

This Court finds that when a party does not first obtain an extension of time to complete discovery, and instead obtains and/or produces discovery in disregard of a scheduling order, the party must be held to the same good cause standard of Rule 16 before including such discovery in a final pretrial order. Otherwise, if a court only considers the *Pennypack* factors when a party obtains discovery in contravention of a scheduling order, a party may strategically not seek an extension of time in order to evade the scheduling order and evade the good cause standard.[1]

---

[1] In fact, in this case, Sunbelt previously sought permission to take the deposition of a non-party witness, Jeff Grimm, after the close of fact discovery. (*See* Letter from Thomas J. Wagner, Esq. and Amy L. Wynkoop, Esq. [D.I. 140], Feb. 7, 2020, p. 3.) This Court denied Sunbelt's request, without prejudice to Sunbelt filing a formal motion, finding no good cause to obtain the deposition after the close of discovery as the potential witness "was identified well beyond the deadline for factual discovery." (*See* Transcript of Proceedings [D.I. 246], Mar. 24, 2020, p. 11:8-12:3; Text Order [D.I. 158], Mar. 24, 2020.) Sunbelt never filed

Accordingly, a party who has produced discovery in disregard of a scheduling order deadline must demonstrate good cause for the failure to obtain discovery within the discovery period. As the Third Circuit stated in *Koplove*, if scheduling orders "can be disregarded without a specific showing of good cause, their utility will be severely impaired." *Koplove*, 795 F.2d at 18. Indeed, "[a]t some point, discovery must end so that the parties can determine the total universe of facts and evidence relevant to a case in order to prepare for trial." *Gautier-James v. Hovensa, LLC*, No. 06-106, 2011 WL 4500153, at *9 (D.V.I. Sept. 27, 2011).

Having found that Sunbelt must demonstrate good cause for its belated fact discovery amendments, the Court turns to Plaintiff's motions to strike the amendments by which Sunbelt provided surveillance evidence and the identities of two fact witnesses after the close of fact discovery. The Court first considers the motion [D.I. 309] to strike the surveillance evidence that was obtained prior to the close of fact discovery but was not produced until five months after the fact discovery deadline. Sunbelt hired a private investigator who conducted surveillance of Plaintiff on September 10, 2019 and generated a report dated

---

a formal motion and did not subsequently seek permission to obtain or produce any other discovery out of time. Then, Sunbelt obtained and/or produced the discovery at issue in the present motions without seeking to extend the discovery period and in disregard of the scheduling order deadlines and now asks for application of the *Pennypack* factors to permit the late discovery.

September 18, 2019. (Cert. of Counsel in Supp. of Def. Sunbelt
Rentals, Inc.'s Opp. to Pl.'s Mot. to Strike, Ex. A [D.I. 314-4].)
Sunbelt does not dispute that it received the report before the
close of fact discovery and that it did not disclose the report to
Plaintiff until March 30, 2020. Sunbelt states in its opposition
brief, however, that the failure to produce the surveillance within
the discovery period was "simply an oversight." (Def. Sunbelt
Rentals, Inc.'s Br. in Supp. of their Opp. to Pl. Dominic Faiella's
Mot. to Strike Sunbelt's March 30, 2020 Discovery Amendment [D.I.
314], p. 4.) At oral argument, counsel for Sunbelt represented
that the failure to timely disclose the surveillance was counsel's
mistake and that she promptly turned over the evidence upon
realizing that it had not been disclosed previously. Plaintiff
notes that the surveillance evidence was produced three days after
Plaintiff produced his medical expert report. (Letter from Anthony
J. Leonard, Esq. [D.I. 319], Sept. 24, 2021, p. 1.) The Court also
notes that the surveillance was produced less than a week after
the Court denied Sunbelt's request to take the deposition of a
non-party witness, Jeff Grimm, after the close of fact discovery.

The Court finds that Sunbelt fails to demonstrate good
cause for an extension of discovery to permit the late production
of the September 2019 surveillance. As noted above, "good cause"
under Rule 16(b) primarily considers the diligence of the party
seeking the amendment. Good cause may be satisfied upon a showing

that an inability to comply with a scheduling order is due to mistake, excusable neglect or other factors that may account for the failure to comply with a scheduling order. *See Newton*, 1995 WL 368172, at *1. However, "carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992); *see also Graham v. Progressive Direct Ins. Co.*, 271 F.R.D. 112, 121 (W.D. Pa. 2010)("tactical errors and delays by experienced attorneys, such as those made in this action, do not demonstrate that [p]laintiffs acted with diligence to this [c]ourt"). Here, while counsel represented at oral argument that the failure to timely produce the surveillance evidence was the result of attorney error, counsel has not demonstrated what efforts were made to ensure that all discovery had been timely produced, and there has not been a factual showing sufficient to support a finding that the failure to produce the surveillance was due to inadvertent error. In addition to the lack of an adequate explanation regarding counsel's purported error, the Court also notes that the surveillance evidence is not the only discovery that counsel purportedly mistakenly failed to timely produce. As demonstrated by the numerous motions to strike presently before this Court and Sunbelt's effort to name in the joint final pretrial order several witnesses that were not previously specifically identified in

12

discovery,[2] this is not an isolated instance of inadvertent error. Moreover, the timing of the production – three days after Plaintiff produced his medical expert report – does not support Sunbelt's representation that the failure to produce surveillance evidence within the discovery period was attributable to a mistake. The Court therefore concludes that Sunbelt's bare assertion of attorney error, without more, fails to demonstrate the good cause required by Rule 16(b) for an extension of the discovery schedule to include surveillance evidence obtained but not produced within the discovery period. As such, Plaintiff's motion [D.I. 309] to strike Sunbelt's March 30, 2020 discovery amendment shall be granted.

The Court next considers Plaintiff's motion [D.I. 305] to strike the updated surveillance evidence obtained by Sunbelt more than a year after the close of discovery. Although Plaintiff was placed under surveillance in September 2019, Sunbelt arranged for new surveillance in March 2021, purportedly to obtain updated footage since the trial of this matter has been delayed due to the pandemic. (Def. Sunbelt Rentals, Inc.'s Br. in Supp. of its Opp. to Pl. Dominic Faiella's Mot. to Strike Def. Sunbelt Rentals,

---

[2] This issue was raised in the parties' proposed joint final pretrial order and is set forth in letters from Plaintiff's counsel and Sunbelt's counsel dated October 21, 2021. (*See* Letter from Anthony J. Leonard, Esq. [D.I. 331], Oct. 21, 2021; Letter from Amy L. Wynkoop, Esq. [D.I. 333], Oct. 21, 2021.)

Inc.'s May 12, 2021 Discovery Amendment [D.I. 311], p. 2.) Sunbelt argues that it did not seek court approval before obtaining this discovery out of time because "surveillance is typically arranged when Plaintiff is not anticipating surveillance" and "it did not occur to counsel to seek permission in advance of obtaining" the updated surveillance. (*Id.* at pp. 10-11.) Sunbelt thus requests an extension of the scheduling order deadlines *nunc pro tunc* for the purpose of permitting the belated surveillance. (*Id.* at p. 11.) Sunbelt also notes that Plaintiff supplemented his own discovery after the close of discovery by producing a report from a medical visit on July 20, 2021. (*Id.* at p. 6.)

    The Court finds that Sunbelt fails to demonstrate good cause to permit the surveillance evidence obtained in March 2021. The Court rejects Sunbelt's proffered excuse that asking for an extension of time would have put Plaintiff on notice that he would be placed under surveillance. Requesting permission for surveillance does not necessarily render the surveillance ineffective, particularly if the request is not specific as to the date and time of surveillance. Sunbelt therefore could have sought an extension of the scheduling order deadlines without setting forth the specifics of the updated surveillance. Moreover, this Court held conferences on March 9, 2021 and March 25, 2021, at which time Sunbelt did not assert a need for updated discovery but at the same time – on March 16, 2021 and March 21, 2021 – was

14

having Plaintiff surveilled in complete disregard of the scheduling order deadlines. During the conference on March 25, 2021, the updated surveillance had already been performed, but even at that time Sunbelt did not so advise the Court.[3] In addition, with respect to Sunbelt's reference to Plaintiff's production of medical records after the close of discovery, it is unclear why Sunbelt raises this issue, as Sunbelt does not seek any relief regarding such discovery. Moreover, Plaintiff's July 2021 production of records from a July 2021 doctor visit does not justify Sunbelt's decision to conduct surveillance after the close of discovery, because the surveillance was completed in March 2021, prior to Plaintiff's updated treatment.[4] Under these circumstances, Sunbelt fails to demonstrate that it had good cause for obtaining

---

[3] The report of the surveillance is dated March 25, 2021 but was not turned over to Plaintiff until May 12, 2021. At oral argument, counsel for Sunbelt could not identify the date on which she received the surveillance report from the investigator. Sunbelt filed a renewed motion for summary judgment on May 5, 2021 and served the report one week later.

[4] Furthermore, unlike surveillance evidence, which must be obtained within the discovery period, medical records that do not exist as of the close of discovery must nonetheless be produced pursuant to Federal Rule of Civil Procedure 26(e). *See Solis Haro v. Burger*, No. 18-2666, 2019 WL 4394532, at *1 (D. Ariz. Sept. 13, 2019)("Ongoing medical treatment that Plaintiff has received does not necessitate an extension of the discovery deadline. Instead, updated medical records should be produced pursuant to Federal Rule of Civil Procedure 26(e)(1)."); *Arthur v. Atkinson Freight Lines Corp.*, 164 F.R.D. 19 (S.D.N.Y. 1995) (under Rule 26(e), plaintiff had duty to produce updated medical records where medical treatment for his alleged injuries was ongoing and affected the claim for damages).

surveillance of Plaintiff in March 2021, and Plaintiff's motion [D.I. 305] to strike the May 12, 2021 amendment by which Sunbelt provided this discovery shall therefore also be granted.

The Court next considers Plaintiff's motion [D.I. 308] to strike a June 10, 2020 discovery amendment, by which Sunbelt amended its response to Plaintiff's Interrogatory No. 3 to identify two fact witnesses, Rick McCarty and Walter Schrenk from Rob's Towing. On May 6, 2019, Sunbelt provided a response to Interrogatory No. 3 identifying "Rick Robs" from "Rob's Towing Center" as an individual with information relating to the accident at issue in this case. (Def. Sunbelt Rentals, Inc.'s Br. in Opp. to Pl. Dominic Faiella's Mot. to Strike Sunbelt's June 10, 2020 Discovery Amendment [D.I. 313], p. 1.) On July 3, 2019, Plaintiff served a subpoena on Rob's Towing and forwarded the documents received in response thereto to Sunbelt in August 2019. (Cert. of Counsel in Supp. of Def. Sunbelt Rentals, Inc.'s Opp. to Pl.'s Mot. to Strike (hereinafter, "Wynkoop Cert."), Ex. D [D.I. 313-7].) These documents identified the drivers of trucks #45 and #60, albeit not by the drivers' names. (*Id.*) On June 10, 2020, more than seven months after the close of discovery and ten months after receiving documents from Rob's Towing, counsel for Sunbelt sent an email to opposing counsel stating that Sunbelt's counsel spoke with Kevin Wilson at Rob's Towing, who advised that the drivers of trucks #45 and #60 were Rick McCarty and Walter Schrenk. (Wynkoop

Cert., Ex. B [D.I. 313-5].) Sunbelt's counsel further stated that, pursuant to Federal Rule of Civil Procedure 26(e), Sunbelt was "correct[ing]" its response to Interrogatory No. 3 to identify Rick McCarty and Walter Schrenk. (*Id.*) Plaintiff contends that Sunbelt's updated interrogatory response was not a "correction" under Rule 26(e) but was rather an improper discovery amendment in violation of Rule 16(b). (Letter from Anthony J. Leonard, Esq. [D.I. 320], Sept. 24, 2021, p. 2.)

The Court rejects Sunbelt's effort to identify two new fact witnesses after the close of fact discovery under the guise of a "correction" under Rule 26(e). Rule 26(e) requires a party who has responded to an interrogatory to "supplement or correct its disclosure or response . . . if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing[.]" FED. R. CIV. P. 26(e). "'[S]upplementation under the Rules means correcting inaccuracies, or filling the interstices of an incomplete [response] *based upon information that was not available* at the time of the initial disclosure.'" *DAG Enters., Inc. v. Exxon Mobil Corp.*, 226 F.R.D. 95, 109 (D.D.C. 2005)(quoting *Keener v. United States*, 181 F.R.D. 639, 640 (D. Mont. 1998)). Rule 26(e) "'does not, however, bestow upon litigants unfettered freedom to rely on supplements produced after a court-

imposed deadline . . . [.]'" *Id.* at 110 (quoting *Reid v. Lockheed Martin Aeronautics Co.*, 205 F.R.D. 655, 662 (N.D. Ga. 2001)). "'In short, Rule 26 imposes a *duty* on [the parties]; it grants them no *right* to produce information in a belated fashion.'" *Id.* (quoting *Reid*, 205 F.R.D. at 662).

Here, while Sunbelt refers to its discovery amendment as a "correction," the amendment does not constitute a proper supplement under Rule 26(e). Sunbelt knew of Rob's Towing's involvement in this matter at least as of the time it responded to Interrogatory No. 3 in May 2019, and the documents identifying the drivers of trucks #45 and #60 of Rob's Towing were provided to Sunbelt in August 2019. Sunbelt thus had more than two months before fact discovery closed on October 30, 2019 to contact Rob's Towing and ask for the names of the drivers of trucks #45 and #60. Sunbelt offers no explanation for its failure to request such information within the discovery period and, consequently, fails to demonstrate that the names of the truck drivers could not have been obtained within the discovery period. Because Sunbelt could have identified the names of these fact witnesses during the discovery period, Rule 26(e) cannot serve as a "safe harbor" for Sunbelt's failure to timely obtain discovery. *See DAG Enters.*, 226 F.R.D. at 110; *see also Murphy by Murphy v. Harpstead,* No. 16-2623, 2019 WL 6650510, at *6 (D. Minn. Dec. 6, 2019)("[T]here is no dispute that the documents could have been gathered and produced

prior to the discovery deadline had any necessary preliminary work been accomplished earlier. Therefore, the production of the . . . documents at issue does not qualify as supplementation pursuant to Rule 26(e)."), *aff'd as modified,* 2020 WL 256194 (D. Minn. Jan. 17, 2020). Furthermore, Sunbelt's lack of diligence fails to demonstrate good cause under Rule 16 for an extension of the discovery period to include the names of these fact witnesses. As Sunbelt fails to demonstrate that Rule 16(b) or Rule 26(e) provide a basis for the belated amendment, Plaintiff's motion [D.I. 308] to strike Sunbelt's June 10, 2020 discovery amendment shall also be granted.

For the reasons above, the Court finds that striking Sunbelt's belated fact discovery amendments is appropriate given Sunbelt's failure to meet the good cause requirement of Rule 16. The Court notes, however, that many courts turn to the *Pennypack* factors upon finding that a party has failed to demonstrate good cause under Rule 16. *See, e.g., St. Clair Intellectual Prop. Consultants, Inc. v. Matsushita Elec. Indus. Co., Ltd.*, No. 04-1436, 2012 WL 1015993, at *7 (D. Del. Mar. 26, 2012)("Having determined that there is not good cause to amend the Scheduling Orders, the Court will now consider whether exclusion of the supplemental expert reports is appropriate under Federal Rule of Civil Procedure 37."), *aff'd,* 522 F. App'x 915 (Fed. Cir. 2013); *Rowe v. E.I. du Pont de Nemours & Co.*, No. 06-1810, 2010 WL 703210,

at *4 (D.N.J. Feb. 24, 2010)(considering *Pennypack* factors "because the denial of [p]laintiffs' request may have the practical effect of excluding at trial the testimony of certain experts"). Although the Court has determined such analysis is not required given Sunbelt's failure to comply with Rule 16, the Court finds that consideration of the *Pennypack* factors further supports striking the discovery amendments.

While the first three *Pennypack* factors do not favor striking the evidence, the fourth factor weighs strongly against permitting the late discovery amendments. As to the first two *Pennypack* factors, prejudice and the ability to cure the prejudice, Plaintiff does not assert prejudice, instead arguing only that the appropriate standard for deciding the motions does not require consideration of prejudice to Plaintiff. (*See* Letter from Anthony J. Leonard, Esq. [D.I. 319], Sept. 24, 2021, p. 2; Letter from Anthony J. Leonard, Esq. [D.I. 318], Sept. 24, 2021, p. 2; Letter from Anthony J. Leonard, Esq. [D.I. 320], Sept. 24, 2021, p. 3.) Similarly, as to the third *Pennypack* factor, Plaintiff has not requested any additional discovery to address Sunbelt's late disclosures, and therefore allowing Sunbelt's discovery amendments at this time will not disrupt the trial of this matter. Under *Pennypack*, the Court must also determine whether Sunbelt acted in bad faith or has willfully failed to comply with the Court's scheduling order. This is not a situation of an isolated piece of

discovery that was inadvertently omitted from production. Notwithstanding the deadlines established by the Court for completion of fact discovery, Sunbelt continued to produce additional discovery in piecemeal fashion on March 30, 2020, June 10, 2020, and May 12, 2021, without seeking leave of court and without any appropriate reasons excusing its failure to produce the discovery in accordance with the scheduling order. The surveillance evidence, obtained six months prior to its production, was produced by Sunbelt three days after Plaintiff produced his medical expert report and less than one week after the Court denied Sunbelt's request to obtain other discovery – the deposition of Jeff Grimm – outside of the discovery period. Sunbelt then contacted Rob's Towing to obtain witness names seven months after the close of discovery, without explanation and in disregard of the fact discovery end date. Further, in March 2021, while in the midst of writing letters to the Court and participating in hearings to explain its failure to produce expert discovery in accordance with the scheduling order, Sunbelt had Plaintiff placed under surveillance outside of the discovery period. Sunbelt's conduct bespeaks of the strategic late production of information in contravention of Rule 16(b) and this Court's scheduling order. The fourth *Pennypack* factor therefore heavily supports Plaintiff's motions to strike Sunbelt's belated production of surveillance and identification of new fact witnesses.

The final *Pennypack* factor requires the Court to consider the importance of the evidence to be excluded, which the Third Circuit has indicated is the most significant factor in deciding whether preclusion of evidence is appropriate. *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 299 (3d Cir. 2012)("[P]erhaps the most important factor in this case is the critical nature of the evidence, and the consequences if permission to amend is denied."); *see also Pennypack*, 559 F.2d at 905 ("the exclusion of critical evidence is an 'extreme' sanction . . . not normally to be imposed absent a showing of willful deception or 'flagrant disregard' of a court order by the proponent of the evidence")(quoting *Dudley v. South Jersey Metal, Inc.*, 555 F.2d 96, 99 (3d Cir. 1977)). Here, there has been no showing that any of the fact discovery at issue is critical. With respect to the two witnesses identified after the close of fact discovery, Rick McCarty and Walter Schrenk, Sunbelt does not explain why these witnesses' testimony is critical to this case.[5] Likewise, Sunbelt fails to demonstrate that the surveillance material is critical in

---

[5] In the parties' proposed final pretrial order, Sunbelt indicated that these witnesses will be offered to testify as to facts and circumstances relating to the pickup and delivery of the Ranger from Sunbelt to Live Nation. Plaintiff's counsel was willing to consent to an individual from Rob's Towing testifying for the purpose of authenticating documents, provided such witness was not Rick McCarty or Walter Schrenk, but Sunbelt would not agree to this limitation. (*See* Letter from Anthony J. Leonard, Esq. [D.I. 363], Jan. 21, 2022, Ex. A.)

this matter. Although surveillance evidence is unique in form, Sunbelt does not assert that the surveillance demonstrates that Plaintiff has misrepresented his condition, nor does Sunbelt otherwise address what impact the admission or preclusion of the surveillance would have on the merits of the case. While Sunbelt asserts that it does not otherwise have a mechanism to challenge Plaintiff's condition, the Court notes that Sunbelt may cross-examine Plaintiff concerning his medical condition and has had the ability to review Plaintiff's medical records and obtain an expert report. As such, Sunbelt fails to demonstrate that the surveillance evidence is critical to Sunbelt's defense. Thus, the fifth and most important *Pennypack* factor does not weigh against striking Sunbelt's fact discovery amendments.

On balance, the Court finds that consideration of the *Pennypack* factors supports striking Sunbelt's discovery amendments dated March 30, 2020, June 10, 2020, and May 12, 2021. Although there is a lack of prejudice to Plaintiff, striking the discovery amendments is appropriate here given Sunbelt's disregard of Rule 16(b) and the Court's scheduling orders and failure to demonstrate that such discovery is critical to the claims and defenses in this case. Consequently, Plaintiff's motions to strike Sunbelt's fact discovery amendments shall be granted.

The Court now turns to Plaintiff's motion [D.I. 307] to strike certain information provided by Sunbelt in connection with

Sunbelt's expert report. On May 20, 2020, Sunbelt produced the report of its expert, Paul Guthorn, MSME, P.E. (Cert. of Counsel in Supp. of Def. Sunbelt Rentals, Inc.'s Opp. to Pl.'s Mot. to Strike, Ex. D [D.I. 315-7].) In several sections of the report, Guthorn referred to data used to simulate the accident at issue in this case. For example, Guthorn noted that a scaled, three-dimensional model of the accident was created using "data and measurements generated by the Faro 3-D laser scanner on September 30, 2019[,]" along with physical evidence, including photographs and video frames extracted from police body cameras, tire marks, and the post-accident position of the Ranger. (*Id.* at p. 5.) Guthorn also noted that he performed an additional accident reconstruction using a computer simulation program called *PC-Crash*. (*Id.* at p. 7.) The report stated that "[v]ehicle parameters were input, and the vehicle was driven along the arced path." (*Id.*) The report further noted that the "PC-Crash frames illustrate the movements and comport with the accident scene physical evidence" and that it was "anticipated that an animation based on the aforementioned may be generated to assist in explaining the accident." (*Id.* at p. 7, n.3.)

On May 27, 2020, Plaintiff's counsel reviewed the report and determined that the report referenced information that had not been provided with the report. (Pl. Dominic Faiella's Br. in Supp. of Mot. to Strike Def., Sunbelt Rentals, Inc.'s Dec. 18, 2020 and

Apr. 8, 2021 Discovery Amendments (hereinafter, "Pl.'s Br.") [D.I. 307], pp. 2-3.) Plaintiff's counsel then wrote to counsel for Sunbelt, noting that the Guthorn report "mention[ed] diagrams, exhibits, animations, etc." and requesting that such information be provided. (*Id.*, Ex. A [D.I. 307-1].) On July 3, 2020, counsel for Sunbelt provided a supplemental report and animation from Mr. Guthorn. (*Id.*, Ex. B [D.I. 307-2].) Plaintiff did not thereafter request any additional information and did not specifically request the data that Guthorn entered into the *PC-Crash* program and used to create the three-dimensional scaled model. (Def. Sunbelt Rentals, Inc.'s Br. in Supp. of its Opp. to Pl. Dominic Faiella's Mot. to Strike Def. Sunbelt Rentals, Inc.'s Dec. 8, 2020 and Apr. 8, 2021 Discovery Amendments (hereinafter, "Def.'s Opp. Br.") [D.I. 315], p. 2.) In addition, Plaintiff did not take the deposition of Guthorn and therefore never inquired about the data used by Guthorn in creating the accident reconstruction. (*Id.* at p. 10.)

On November 13, 2020, Plaintiff filed a motion *in limine* which sought exclusion of the Guthorn report on several grounds, one of which was Sunbelt's failure to produce the data underlying the report. Specifically, Plaintiff argued that Guthorn's accident reconstruction "relies on a crash simulation program which has not been produced and which is purportedly based on data that is not identified in his report." (Pl., Dominic Faiella's Mot. in Limine

to Preclude the Accident Reconstruction and Video Animations of Paul S. Guthorn, MSME, P.E. [D.I. 205-1], p. 3.) Plaintiff asserted in this regard that the Guthorn report "does not provide any information about the 'vehicle parameters' that were input." (*Id.* at pp. 25-26.) Similarly, Plaintiff asserted that the Guthorn report did not include the data generated by the Faro 3-D laser scanner that was used to create a scaled, three-dimensional model of the accident. (*Id.* at p. 26.) In December 2020, counsel for Sunbelt mailed to Plaintiff's counsel a CD of data, along with a letter stating "[e]nclosed on CD is Paul Guthorn's data that you requested in your recent Motion in *Limine*." (Pl.'s Br., Ex. C [D.I. 307-3].)

After filing the motion *in limine*, Plaintiff raised Sunbelt's belated production of the underlying Guthorn data to this Court. (Letter from Anthony J. Leonard, Esq. [D.I. 233], Jan. 6, 2021.) Specifically, in January 2021, Plaintiff sent a letter asking this Court for permission to move to strike the belated production. (*Id.*) The Court addressed the issue during hearings on March 9, 2021 and March 25, 2021 and directed Sunbelt to provide an affidavit from Guthorn concerning the *PC-Crash* program utilized in preparation of his expert report. (*See* Order [D.I. 262], Mar. 29, 2021, p. 1, ¶ 1.) Sunbelt thereafter produced the requisite affidavit, in which Guthorn stated that all data relied on in the report was provided to Plaintiff, although he further indicated

that he had previously inadvertently failed to include one data file that was on his work computer while he was working remotely due to the pandemic, and he only discovered the omission when preparing the affidavit. (Aff. of Paul Guthorn, MSME, P.E. [D.I. 264], Apr. 8, 2021, p. 5.) That additional data file was forwarded to Plaintiff on the same date that Guthorn signed the affidavit, along with an email from Sunbelt's counsel which noted that Sunbelt provided a "PC-Crash project file" because "[i]n responding to the Court's questions, Mr. Guthorn discovered that only one of the PC-Crash project files had been provided." (Pl.'s Br., Ex. D [D.I. 307-4].) The Court, unable to resolve the issue informally pursuant to Local Civil Rule 37.1, directed Plaintiff to file a formal motion. (Transcript of Proceedings [D.I. 310], Apr. 12, 2021, p. 8:18-24.) Both the December 18, 2020 production of data and the April 8, 2021 production of additional data are now the subject of Plaintiff's final motion to strike.

Plaintiff argues that Sunbelt was required under Rule 26(a)(2)(B) to provide "the facts or data considered by the witness" in forming his opinions and that Sunbelt cannot now supplement the Guthorn report with the underlying data. (Pl.'s Br. at pp. 4, 6-7.) Plaintiff argues that the *Pennypack* factors warrant exclusion of the December 18, 2020 and April 8, 2021 discovery amendments, specifically asserting that he has suffered irreparable prejudice because he decided to forgo expert

depositions based on the report as written and filed dispositive motions based on the lack of data. (*Id.* at pp. 6-8.) Plaintiff contends that Sunbelt should not now be "permitted to use those motions to learn how to fortify its expert's report." (*Id.* at p. 7.) Plaintiff further argues that Sunbelt has demonstrated bad faith and willfulness in failing to comply with the orders of this Court, noting that Guthorn provided an expert report on behalf of Sunbelt in another case, *Roberts v. Sunbelt Rentals, Inc.*, No. 14-40, 2016 WL 1259414, at *1 (W.D. Va. Mar. 30, 2016), in the United States District Court for the Western District of Virginia, and also failed to produce the underlying data in that case. (*Id.* at pp. 7-8.) Plaintiff thus argues that Sunbelt's failure to produce the data here is inexcusable. (*Id.*) Finally, Plaintiff notes that he is not seeking exclusion of the Guthorn report in its entirety, as he seeks only to strike the amendments by which Sunbelt provided the underlying data. (*Id.* at p. 6.) Sunbelt again asserts that the failure to produce the underlying data was a mistake of counsel and was not a strategic decision. (Def.'s Opp. Br. at p. 16.)

Pursuant to Federal Rule of Civil Procedure 26(a)(2), a witness who is "retained or specially employed to provide expert testimony" must produce a written report that contains, *inter alia*, "a complete statement of all opinions the witness will express and the basis and reasons for them" as well as "the facts or data considered by the witness in forming them[.]" FED. R. CIV. P.

26(a)(2)(B).   After   disclosing   an   expert   report,   a   party   must
"supplement   or   correct   its   disclosure   or   response"   if   it   "learns
that   in   some   material   respect   the   disclosure   or   response   is
incomplete   or   incorrect   .   .   .   [.]"   FED. R. CIV. P. 26(e)(1)(A).
While   "'true   supplementation'"   –   i.e.,   correcting   inadvertent
errors   or   omissions   –   is   required   under   Rule   26(e),   courts   have
"'repeatedly   rejected   attempts   to   avert   summary   judgment   by
'supplementing'   an   expert   report   with   a   'new   and   improved'   expert
report.'"   *Hartle v. FirstEnergy Generation Corp.*,   7   F.   Supp.   3d
510,   517   (W.D.   Pa.   2014)(quoting   8A   Charles   Alan   Wright,   Arthur   R.
Miller   &   Richard   L.   Marcus,   *Federal Practice and Procedure* §   2049.1
3d   ed.   2005).   "Rule   26(e)   is   not   a   vehicle   for   experts   to
'continually   bolster,   strengthen,   or   improve   their   reports   by
endlessly   researching   the   issues   they   already   opined   upon,   [and
then]   continually   supplement   their   opinions.'"   *Spencer Spirit
Holdings, Inc. v. Sunrise Roofing, Inc.*,   No.   19-186,   2020   WL
4757075,   at   *2   (W.D.N.C.   Aug.   17,   2020)(quoting   *In re Bear Stearns
Co., Inc. Sec., Derivative, & ERISA Litig.*,   263   F.   Supp.   3d   446,
451   (S.D.N.Y.   2017)).   "Nor   is   it   a   'vehicle   to   permit   a   party   to
serve   a   deficient   opening   report   and   then   remedy   that   deficiency
through   the   expedient   of   a   'supplemental'   report.'"   *Id.*   (quoting
*Bear Stearns*,   263   F.   Supp.   3d   at   451).   "If   a   party   fails   to   provide
information   or   identify   a   witness   as   required   by   Rule   26(a)   or
(e),   the   party   is   not   allowed   to   use   that   information   or   witness

to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1). "To determine whether a discovery violation warrants excluding the associated evidence, courts in the Third Circuit consider the . . . *Pennypack* factors[.]" *Lee*, 2016 WL 4373694, at *4.

The Court finds that Sunbelt was obligated under the plain language of Rule 26(a) to produce to Plaintiff the data used by Guthorn in creating his accident models. However, the Court accepts the representation of Sunbelt's counsel that the failure to produce the data was due to an inadvertent omission of counsel and that the failure was, therefore, substantially justified. Unlike Sunbelt's failure to produce surveillance evidence from 2019, which was based on an unspecified mistake of counsel, counsel for Sunbelt has adequately explained the failure to produce the Guthorn data. Specifically, counsel for Sunbelt explained that because Guthorn referenced the basis for his opinions and described the methodology of his analysis in his report, counsel did not believe anything additional was required. (Cert. of Counsel in Supp. of Def. Sunbelt Rentals, Inc.'s Opp. to Pl.'s Mot. to Strike, Ex. N [D.I. 315-17], at 14:9-24.) Counsel for Sunbelt represents that when she received a request from Plaintiff's counsel for "diagrams, exhibits, animations, etc.," it did not occur to her that Plaintiff sought the data that was input by Guthorn into the

*PC-Crash* program. (Letter from Amy L. Wynkoop, Esq. [D.I. 264], Apr. 8, 2021.) Indeed, when Sunbelt provided supplemental information responsive to Plaintiff's counsel's request for additional information, Plaintiff did not thereafter specifically identify the underlying data that was still missing, nor did Plaintiff raise the deficiency with the Court. (*Id.*) The Court, consequently, cannot conclude that Sunbelt's counsel intentionally withheld the Guthorn data.[6] Further, Sunbelt's counsel represented at oral argument that the data underlying the Guthorn report existed at the time the report was prepared and was utilized in the creation of the report, and it therefore does not appear that Sunbelt created new data to bolster the Guthorn report, nor does

---

[6] In so finding, the Court notes that Sunbelt previously committed the same error in the *Roberts* case. In *Roberts*, the plaintiff argued that "Guthorn [did] not provide the data that he relied on to determine the vehicles' speeds and positions leading up to the accident" and did not "give the data that he entered into PC-Crash to create the simulations of the accident." *Roberts*, 2016 WL 1259414, at *2. The court in *Roberts* noted that "Sunbelt['s] . . . reasons for failing to timely disclose all of the data that Guthorn relied on in forming his opinions are weak" but nonetheless allowed the report because "[t]his is not a case where a party has sprung a new opinion on another party only days before trial" as "Guthorn has not changed his opinions since he was disclosed." *Id.* at *3. Clearly, in light of the *Roberts* decision, Guthorn and Sunbelt should have known that they were required to produce the data that Guthorn input into the *PC-Crash* system. However, Sunbelt was represented by different counsel in the *Roberts* case, and there is no indication that Sunbelt's counsel in the present case had any knowledge of the proceedings in *Roberts*, nor does *Roberts* provide a basis for this Court to conclude that the data was strategically withheld by Sunbelt here.

the subsequently produced data result in a different analysis or conclusion. Accordingly, the Court finds that Sunbelt did not engage in gamesmanship by withholding the data at the time it produced the Guthorn report.[7]

Having found that Sunbelt was required to supplement its expert report under Rule 26(e) when it learned through Plaintiff's motion *in limine* that the Guthorn data was missing, the Court next considers whether the supplemental production was timely. As noted above, Rule 26(e)(1) requires supplementation of Rule 26(a) disclosures "in a timely manner." FED. R. CIV. P. 26(e)(1). Sunbelt produced the Guthorn report in May 2020, yet it did not disclose the underlying data until December 2020 and April 2021. While Sunbelt's counsel did not realize that production of the data was required until Plaintiff filed a motion *in limine* in November 2020, Sunbelt did not immediately produce the Guthorn data upon receipt of Plaintiff's *in limine* motion. Instead, Sunbelt sent the data to Plaintiff one month later, in December 2020, after the briefing on summary judgment motions was complete. Sunbelt provides no explanation for its one-month delay in providing the underlying data and, accordingly, the Court is unable to conclude that Sunbelt supplemented its Rule 26(a) disclosures "in a timely manner."

---

[7] The Court further accepts the representation in the Guthorn affidavit that the failure to produce additional program files until April 8, 2021 was due to a mistake of the expert.

In light of Sunbelt's failure to comply with Rule 26(a) and (e), the Court must consider whether exclusion of the data is warranted as a sanction under Rule 37 and the *Pennypack* factors. As noted above, the first two *Pennypack* factors require the Court to consider the prejudice or surprise to the party against whom the evidence would be presented and the ability to cure the prejudice. The only prejudice asserted by Plaintiff is that he filed a summary judgment motion and an *in limine* motion based, in part, upon the lack of data underlying the Guthorn report, and Sunbelt purportedly "cannot be permitted to use those motions to learn how to fortify its expert's report." (Pl.'s Br. at p. 7.) However, the District Judge has ruled on Plaintiff's summary judgment motion without consideration of the Guthorn report and noted that it will address Plaintiff's arguments concerning Sunbelt's experts when addressing the *Daubert* motions, which are presently pending before the District Court. (Op. [D.I. 349], Dec. 17, 2021, pp. 26-27.) In addition, although the lack of underlying data was one basis upon which Plaintiff sought to strike the Guthorn report in his initial motion *in limine*, Plaintiff filed a renewed *in limine* motion [D.I. 365] and did not assert the lack of underlying data as a basis to preclude Guthorn's opinion. The Court, therefore, does not find that any surprise or prejudice to Plaintiff is sufficient to support exclusion of the data given that the data existed at the time Guthorn created his report and

does not change the report or inject a new theory that changed
Guthorn's opinion in this case. Moreover, assuming there was
prejudice from the belated amendment, this Court provided
Plaintiff an opportunity to obtain additional discovery to cure
any prejudice when this issue was discussed at hearings in March
2021. Indeed, as noted in *Roberts*, "[w]hat matters, after all, is
that [the plaintiff] has sufficient data that she can rebut
Guthorn's opinions." *Roberts*, 2016 WL 1259414, at *4. Here,
Plaintiff remained steadfast that he required no additional
discovery and rejected the opportunity to take additional
discovery. (*See, e.g.,* Transcript of Proceedings [D.I. 282], Mar.
25, 2021, p. 19:1-7.) The Court, consequently, finds that the first
two *Pennypack* factors weigh against Plaintiff's motion to strike
the Guthorn data.[8]

---

[8] The Court also notes that Plaintiff did not specifically request
the missing underlying data from Sunbelt's counsel and instead
filed a motion *in limine* based, in part, on Sunbelt's failure to
provide the data. Nor did Plaintiff seek to depose the expert,
thereby casting doubt on any claimed prejudice. *See Harvey v.
District of Columbia*, 949 F. Supp. 874, 877 (D.D.C.)("Had the
defendants promptly communicated with the plaintiff, they could
have met and conferred about the report and still would have had
time to file a motion to compel production of a supplemental
report. Moreover, the defendants could have noticed [the expert's]
deposition at any time. Consequently, the defendants' assertion of
'significant[] prejudice' is utterly disingenuous."),
*reconsideration denied by* 949 F. Supp. 878 (D.D.C. 1996); *see also
Sullivan v. Glock, Inc.,* 175 F.R.D. 497, 506 (D. Md. 1997)("If the
most important goal is to avoid surprise at trial or last minute
discovery about expert testimony on the eve of trial, then counsel
should consider filing a motion to compel adequate disclosures or
in the alternative to exclude expert testimony as soon as possible

The third *Pennypack* factor requires the Court to consider the extent to which the evidence, if admitted, would disrupt trial of the case. Because Plaintiff has not requested any additional discovery, allowing the Guthorn data will not disrupt the trial of this matter. The third *Pennypack* factor therefore also weighs against Plaintiff's motion to strike the Guthorn data.

In considering the fourth *Pennypack* factor, whether Sunbelt has acted in bad faith or in willful disregard of the court rules and orders, as set forth above the Court accepts the representation of Sunbelt's counsel that the failure to produce the Guthorn data was due to a fundamental misunderstanding by counsel of what should have been provided with the Guthorn report. Based on the record before this Court, the Court cannot conclude that Sunbelt's counsel acted in bad faith or willfully in withholding the data. The fourth *Pennypack* factor therefore does not support Plaintiff's motion to strike with respect to the Guthorn data.

---

following the discovery cutoff, so that if the court declines to exclude the expert's testimony, the opinions of that expert may be discovered, and a rebuttal expert engaged as far as possible ahead of trial. Alternatively, if the most important goal of the attorney is to preclude the expert from testifying at trial by evoking the automatic exclusion provisions of Rule 37(c)(1), he or she should remember that this course is not risk free, and that the exclusion of evidence is a severe sanction which the court may be reluctant to impose despite Rule 37(c)(1).").

Finally, the Court considers the importance of the evidence to be excluded. Plaintiff notes that his motion to strike does not seek to strike the Guthorn report in its entirety, although Plaintiff's initial motion *in limine* sought to preclude Guthorn's accident reconstruction "because the underlying data had never been produced during discovery." (Pl.'s Br. at p. 2.) Sunbelt asserts that striking the underlying data will be "tantamount" to precluding Guthorn from testifying. (Def.'s Opp. Br. at p. 4.) Plaintiff's subsequently filed *in limine* motion does not seek exclusion of the Guthorn report based on Sunbelt's failure to provide the underlying data.[9] It is unclear whether striking Sunbelt's December 18, 2020 and April 8, 2021 discovery amendments may result in the exclusion of the Guthorn report. The Court, however, notes Sunbelt's assertion that striking the data, and by extension the report in its entirety, will be detrimental to Sunbelt's defense because Guthorn provided the only accident reconstruction in this case. (Def.'s Opp. Br. at p. 17.) Thus, at this time, the Court finds that the fifth *Pennypack* factor weighs against striking Sunbelt's December 18, 2020 and April 8, 2021 discovery amendments to the extent that such amendments are a foundation to Sunbelt's only accident reconstruction report.

---

[9] The District Court held a *Daubert* hearing on March 8, 2022, and the hearing will continue on April 4, 2022.

In *Pennypack*, the Third Circuit noted that the exclusion of critical evidence is "'not normally to be imposed absent a showing of willful deception or 'flagrant disregard' of a court order by the proponent of the evidence." *Pennypack*, 559 F.2d at 905 (quoting *Dudley*, 555 F.2d at 99). The Court finds that striking the Guthorn data is not an appropriate sanction under the circumstances presented here. Sunbelt did not produce the data to bolster or change the Guthorn opinion, and the Court has provided Plaintiff with opportunities to cure any prejudice arising from the belated production. In addition, the Court does not find in this case bad faith or willfulness on the part of Sunbelt's counsel for the belated production of the Guthorn data and further finds that striking this data may result in exclusion of an expert report. Accordingly, the Court finds that the *Pennypack* factors on balance weigh against Plaintiff's motion to strike the December 18, 2020 and April 8, 2021 discovery amendments.

CONSQUENTLY, for the reasons set forth above and for good cause shown:

IT IS on this **18th** day of **March 2022,**

**ORDERED** that Plaintiff's motions [D.I. 305, 308, 309] to strike Sunbelt's discovery amendments dated March 30, 2020, June 10, 2020, and May 12, 2021 shall be, and are hereby, **GRANTED** and these discovery amendments are hereby **STRICKEN**; and it is further

**ORDERED** that Plaintiff's motion [D.I. 307] to strike Sunbelt's December 18, 2020 and April 8, 2021 discovery amendments shall be, and is hereby, **DENIED**.

s/ Ann Marie Donio
ANN MARIE DONIO
UNITED STATES MAGISTRATE JUDGE

cc:  Hon. Renée Marie Bumb